## Richmond

### John G. Kolbe, Incorporated v. Chromodern Chair Company, Incorporated.

April 26, 1971.

Record No. 7438.

Present, All the Justices.

*George E. Allen* (*Allen, Allen, Allen & Allen*, on brief), for plaintiff in error.

*Robert E. Shepherd, Jr.* (*Steingold, Shepherd & Steingold*, on brief), for defendant in error.

I'Anson, J., delivered the opinion of the court.

John G. Kolbe, Inc., a Virginia corporation, filed its motion for judgment against Chromodern Chair Company, Inc., a California corporation, seeking damages for breach of contract for the sale of merchandise. The motion for judgment was served on the Secretary of the Commonwealth pursuant to the provisions of § 8-81.3, a section of Virginia's "long arm statute" (Sections 8-81.1 through 8-81.5, Code of 1950, 1957 Repl. Vol., 1970 Cum. Supp.) which authorizes

such service on a foreign corporation as to any cause of action arising from its "Transacting any business in this State."

Chromodern filed a plea in abatement to the jurisdiction of the court and moved to quash the service of process. After hearing evidence, the trial court sustained the plea and entered an order dismissing the action. Kolbe is here on a writ of error to the court's order.

The sole question presented by Kolbe's assignment of error is whether Chromodern was "Transacting any business in this State" within the meaning of Code § 8-81.2(a)(1), so as to subject it to the jurisdiction of the courts of Virginia "as to a cause of action arising" from such activity.

The evidence shows that Chromodern, whose administrative offices are located in Vernon, California, is a manufacturer of commercial chairs, tables and related items. Kolbe, a dealer in restaurant equipment, is located in Richmond, Virginia.

On June 18, 1968, William Conklin, a manufacturer's representative, was appointed by Chromodern as its representative in Virginia, North Carolina, South Carolina, and all of Maryland except Baltimore, and was authorized to name dealers in his territory. On July 31, 1968, Conklin advised Chromodern that "We have established John G. Kolbe Company * * * as a non-stocking Chromodern dealer." From October 15, 1968, through April, 1969, Conklin sold Chromodern merchandise to dealers in Norfolk and Roanoke amounting to $3,446.60.

On October 8, 1968, W. Glenn MacDonald, of Richmond, Virginia, a manufacturer's representative, while at the "Marine Corps Air Force Base" in Jacksonville, North Carolina, learned that the Officers' Open Mess was interested in purchasing chairs of Chromodern's design. MacDonald telephoned Eugene Minkel, Chromodern's executive secretary in charge of the company's sales outside of California, that he could secure an order for 150 chairs for the officers' mess if they were available and that Kolbe would be the dealer.

MacDonald testified that Minkel told him the chairs were available. He was authorized by Minkel to go ahead and "if possible, make the sale and * * * represent them [Chromodern] on that particular sale." He further said that he represented Chromodern as an employee in this particular transaction, and that he was authorized by Minkel to accept the order from Kolbe.

MacDonald returned to Richmond, wrote up Kolbe's purchase

order for the chairs, which were to be shipped direct to the Marine base, secured the signature of a Kolbe employee, and then mailed the order to Chromodern. Kolbe promptly received an acknowledgement of the sale, and upon receipt of the invoice paid Chromodern the amount of $4,275, less a cash discount. Chromodern shipped the chairs FOB to the Marine base. They were rejected by the officers' mess, and then shipped to Virginia and placed in storage by Kolbe.

Minkel stated in his deposition that "No [Chromodern] representative has been designated [in Virginia]. There have been preliminary discussions from time to time, but that is as far as it has gone." He said MacDonald contacted him by telephone on October 8 and advised him that he could obtain an order for 150 chairs, and he accepted MacDonald's verbal order. MacDonald told him he would get a confirming order from Kolbe.

Minkel further testified that it was Chromodern's normal business practice to require a written order before processing any merchandise and to formally accept the order by a written acknowledgement only after the dealer's credit had been approved. No telephone, office facility or inventory was ever maintained by Chromodern in Virginia, nor did any officer, director or employee visit Virginia.

The development of the doctrine extending jurisdiction *in personam* over nonresidents beyond the requirement of physical presence to include actions arising out of certain activities within the forum State was set forth by the Supreme Court of the United States in *International Shoe Co.* v. *Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). *Cf. Hanson* v. *Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed. 2d 1283 (1958).

In *International Shoe* the Court held that in order to subject a foreign corporation to a judgment *in personam*, due process requires only that the corporation have "certain minimum contacts" within the territory of the forum, so that the maintenance of the action does not offend traditional notions of fair play and substantial justice. The Court said:

"[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a pro-

cedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104.

The doctrine of *International Shoe* was applied in *McGee, supra.* There the Court upheld the power of California to subject a foreign corporation to suit in its courts on the mere basis of an isolated insurance contract, "which had substantial connection with that State." 355 U.S. at 223, 78 S.Ct. at 201, 2 L.Ed.2d at 226.

In *Hanson, supra,* the Court noted that the requirements for personal jurisdiction over nonresidents had changed considerably since "the rigid rule of *Pennoyer* v. *Neff*" [1] because of "progress in communications and transportation," but said that it would be "a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." 357 U.S. at 251, 78 S.Ct. at 1238, 2 L.Ed.2d at 1296. However, the only limitation put on the doctrine established in *International Shoe*, and followed in *McGee*, was that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1240, 2 L.Ed.2d at 1298.

Encouraged by the broadened doctrine of personal jurisdiction over nonresident persons and corporations conducting activities within a state, the legislature of this State, in 1964, enacted §§ 8-81.1 through 8-81.5, commonly known as the "long arm statute." Section 8-81.2, with the exception of sub-paragraph (5), is modeled upon provisions of the Illinois Civil Practice Act and the Uniform Interstate and International Procedure Act.[2]

Only two cases involving provisions of the long arm statute have been before us since its enactment. See *Walke* v. *Dallas*, 209 Va. 32, 161 S.E.2d 722 (1968); and *Carmichael* v. *Snyder*, 209 Va. 451, 164 S.E.2d 703 (1968). The issues there made it unnecessary to consider the question now before us.

---

1. Holding that "Process from the tribunals of one State cannot run into another State, and summons parties there domiciled to leave its territory and respond to proceedings against them." 95 U.S. 714, 727, 24 L.Ed. 565, 570 (1878).

2. Approved by the Commissioners on Uniform State Laws and the American Bar Association in 1962. See 9B U.L.A., 1963 Pocket Part at 75; Smithers, "*A Look at the Virginia 'Long Arm' Statute*," Virginia Trial Lawyers Association (6th Annual Seminar) 63, 66 (March 26, 1965).

Code § 8-81.2(a)(1) vests the courts of this State with "personal jurisdiction over a person[3] who acts directly or by an agent as to a cause of action arising from the person's (1) Transacting any business in this State."

It is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause. *Carmichael* v. *Snyder, supra,* 209 Va. at 456, 164 S.E.2d at 707. Since the statute provides "Transacting *any* business in this State" (emphasis added), it is a single act statute requiring only one transaction in Virginia to confer jurisdiction on its courts. See *Mc-Gee, supra; Longines-Wittnauer W. Co.* v. *Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 456, 261 N.Y.Supp.2d 8, 17-18, 209 N.E.2d 68, 74-75 (1965),[4] *cert. denied* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158. Section 8-81.2(a)(1) discarded the concept of "doing business" as the exclusive test of jurisdiction and provided instead, insofar as pertinent here, that personal jurisdiction may be asserted over a nonresident if, in person or through an agent, he transacts any business in this State. See *Longines-Wittnauer, supra,* 15 N.Y.2d at 451, 261 N.Y.Supp.2d at 14, 209 N.E.2d at 72.

Chromodern says that since the Virginia long arm statute was modeled upon the Illinois statute, we should follow the leading Illinois case of *Grobark* v. *Addo Mach. Co.,* 16 Ill.2d 426, 158 N.E. 2d 73 (1959). *Grobark* has had an unusual history. It cannot be squared with *Gray* v. *American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). It has been subject to strong professional criticism. See Currie, *"The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois,"* 1963 U.of Ill.L.F. 533, 566-79. It was "brushed aside" in *Kropp Forge Co.* v. *Jawitz,* 37 Ill.App.2d 475, 186 N.E.2d 76 (1962), and "weakened" by other Illinois appellate court cases. See *American Compressed Steel Corp.* v. *Pettibone Mulliken Corp.,* 271 F.Supp. 864, 868 (1967).

Extensive research has failed to produce a situation similar to the facts in the present case. Moreover, the divergence of judicial opinions demonstrates that the holding in each case must rest upon an analysis of its own particular facts and circumstances. See Annotation: 27 A.L.R.3d 397 (1969), and the great number of cases there collected.

---

3. Person includes corporations. Code § 8-81.1.

4. The New York long arm statute was also modeled upon the Illinois statute.

Here the evidence clearly demonstrates that MacDonald acted under the authority and direction of Minkel in making the sale to and securing the purchase order from Kolbe, a Chromodern dealer in this State. Chromodern required a written order before it processed any merchandise, and it was the written order secured by MacDonald in Richmond which bound Kolbe in the transaction and placed upon it the financial responsibility for the purchase. Although the chairs were shipped to North Carolina as a convenience to Kolbe, they were sold to Kolbe on the basis of its credit and a written obligation secured in Virginia through MacDonald.

It is clear that Chromodern through MacDonald voluntarily and purposefully availed itself of the privilege of conducting activities within Virginia which amounted to a substantial transaction of business in this State. Chromodern's actions, both in this transaction and in others shown by the evidence, delineate a pattern of activities intended to develop the Chromodern market in Virginia and to reap economic benefit therefrom.

Since Chromodern has purposefully availed itself of the privilege of conducting business activities within Virginia and thereby invoked the benefits and protection of the laws of this State, it would not offend traditional notions of fair play and substantial justice to require it to submit to the jurisdiction of the courts of this State.

For the reasons stated, the order of the court below dismissing the motion for judgment is set aside and the case is reinstated and remanded for further proceedings.

*Reversed and remanded.*