## CIRCUIT COURT OF HENRICO COUNTY

Bathtique of Va.

v.

Central Trust Co.

May 10, 1974

Case No. N-202; D-80

By JUDGE E. BALLARD BAKER

The Bill of Complaint asks that the defendant, a New York bank, be restrained from accelerating an obligation of the plaintiffs, a Virginia corporation and residents of Virginia, and be ordered to pay certain sums to the plaintiffs for disruption of business.

The defendant filed a Motion to Quash Process, alleging that it is a foreign corporation not doing business in Virginia within the meaning of §§ 8-60, 13.1-111 or 13.1-274. In an exchange of memoranda, the plaintiff based authority for jurisdiction over the defendant on Virginia's "Long-Arm Statute," §§ 8-81.1 through 8-81.5, and counsel have argued the point on that statute.

By Stipulation of Facts, it appears that in June, 1973, the defendant was approached in Rochester, N.Y., about financing a Bathtique franchise in Virginia. The defendant agreed to lend funds to J.F.R. Associates, Inc., the predecessor of the plaintiff corporation, so long as the defendant had recourse against Bathtique International, Ltd., of Rochester. The defendant loaned $24,000 to J.F.R. Associates in Rochester and took back two promissory notes, payable August 13, 1973, and September 14, 1973, after Bathtique International executed a $22,000 guarantee in Rochester. The understanding between J.F.R. Associates

and defendant was that the $24,000 debt to defendant would be converted to an installment basis.

On January 10, 1974, defendant mailed to Joseph F. Ragusa, one of the individual plaintiffs, a security agreement to be executed in Virginia by the buyer and then in New York by the seller, Bathtique International. Plaintiffs signed the agreement in Virginia and returned it to the defendant, along with a payment of $1,096.13.

It was contemplated that once the security agreement was fully executed, Bathtique International would assign its rights to the defendant and the plaintiffs would repay the defendant in installment payments.

From Exhibits attached to the Bill of Complaint, it appears that the $1,096.13 payment covered interest under the promissory notes payable in August and September, 1973, and that the plans to convert the notes to an installment obligation did not materialize. Consequently, defendant made demand on J.F.R. Associates, Inc., for payment of the notes. There is no evidence that Bathtique International ever signed the security agreement executed in Virginia by the plaintiffs.

The Bill of Complaint seeks to "restrain defendant from accelerating complainants' obligations. . ." without making any reference to the notes payable to defendant on August 13, 1973, and September 14, 1973. The Bill states the plaintiffs' intentions to continue making payments of $532.74, under the security agreement they signed, upon the apparent theory that the defendant's letter of January 10, 1974, and plaintiffs' response resulted in the security agreement being the contract between the parties.

Under § 8-81.2, this Court may exercise personal jurisdiction over the defendant as to a cause of action arising from the defendant (1) transacting any business in this State, or (2) contracting to supply services or things in this State. There is no contention that the other provisions of § 8-81.2 have any application.

The Stipulation of Facts, and the allegations of the Bill not inconsistent with the Stipulation, lead to a conclusion that it has not been shown that the defendant has entered into the security agreement contract providing for installment payments. Not until Bathtique International signed the agreement would it become complete-

ly executed. I do not see how it can be said that the defendant has contracted to supply services or things in Virginia, because of what defendant did relating to the security agreement. Until that became fully executed, it was no more than a preliminary step to a contract.

However, the defendant did accept two promissory notes made by J.F.R. Associates, a Virginia corporation. The Stipulation says the money was loaned in New York, but does not state where the notes were signed. Counsel seem to agree that one note was signed by J.F.R. Associates in Virginia, and plaintiffs say both were. No copy of either note has been presented.

The jurisdictional issue comes down to whether the defendant, by accepting the notes of a Virginia corporation, where the money was paid out in New York, has been transacting business in Virginia or has contracted to supply services in Virginia.

In *Kolbe v. Chromodern*, 211 Va. 736 (1971), the Supreme Court said that the statute's purpose, "is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause." It is a single act statute, requiring only one transaction. However, "traditional notions of fair play and substantial justice. . ." must be met before the single act relied upon can support jurisdiction.

A number of cases involving promissory notes are collected in 20 A.L.R.3d 1239-1245. While the cases involve actions by the holder against the maker, the factors considered in the determination of the jurisdictional points are helpful. And it may be significant that no case has been cited, or found, which deals solely with the providing of money in one state to be used in another as a basis for jurisdiction.

Upon considering the cases in this annotation, as well as the annotation in 27 A.L.R.2d 397, it does not seem to me that the defendant was engaged in "some purposeful activity in this State. . ." sufficient to support jurisdiction when it made the loan to J.F.R. Associates in New York. The execution of the note in Virginia was an act done by J.F.R., not the defendant, and all defendant did was accept it in New York.

If we add to those acts the subsequent mailing to Ragusa of the security agreement in January, 1974, along with the defendant's letter, it still seems to me, as I read the cases, this is inadequate to meet the "fair play and substantial justice. . ." test laid down by the Supreme Court of the United States. 36 Am. Jur. 2d, *Foreign Corporations*, §§ 329-333.

Under the circumstances, I am of opinion that the Motion to Quash Process must be sustained.