## CIRCUIT COURT OF BOTETOURT COUNTY

Walker Randolph Jennings

v.

Don Warren, trading as
Trinity Auto Crushers,
Emory H. Drain, and
Raymond Garth Bruton

April 28, 1977

Case No. 1221

By JUDGE ROSCOE B. STEPHENSON, JR.

The question presented is whether the court has personal jurisdiction over the defendant, Raymond Garth Bruton (Bruton), as a result of the so-called "Long Arm" Statute (Code § 8-81.1 et seq.).

Plaintiff (Jennings) sued Don Warren, Emory H. Drain and Bruton to recover damages for personal injuries sustained in an accident in Botetourt County allegedly resulting from the negligence of each defendant. The motion for judgment alleges that Bruton negligently maintained a fork lift loader which injured plaintiff. Bruton is a resident of the State of Texas, and was served with process in that state under Virginia's "Long Arm" Statute. The allegation in the motion for judgment purporting to give this court personal jurisdiction over Bruton reads:

3. That your defendant Raymond Garth Bruton is the owner of certain machines which are used by the defendant Don Warren and of the machine which was directly related to and involved in this cause of action; and that the Defendant Raymond Garth Bruton was doing business in Virginia by way of receiving rents for use

of said machines in Virginia by the Defendant Don Warren.

Bruton has challenged this court's jurisdiction by a plea in abatement. An evidentiary hearing on the plea established the following facts: Bruton and Warren executed a written agreement whereby Bruton leased to Warren certain equipment (including the fork lift loader involved herein) for a period of fifty weeks at a rental of $1,000.00 per week. The agreement further provided that "Warren will relieve and assume all responsibility from Raymond G. Bruton for maintenance, insurance, taxes, fines, permits and liens in any way." The lease agreement was executed in the State of Kentucky; Warren, at the time, resided in Kentucky; Bruton, at the time, resided in Texas; and the equipment, at the time, was located in the State of North Carolina. Thereafter the equipment was used in North Carolina, West Virginia and Virginia. The equipment was in good condition when leased. Bruton had no control over where the machines were used, how they were used, or their maintenance. The machines were used by Warren in Virginia at least twice for periods of "several weeks at a time." The rent payments were mailed by Warren to Bruton each week, and some payments were mailed from Virginia. There was no evidence that Bruton knew the equipment was being used in Virginia.

Plaintiff contends that this evidence established that Bruton was "doing business" in Virginia when plaintiff was injured, thereby giving this court personal jurisdiction over him. The court disagrees.

Plaintiff has the burden of proving that this court has jurisdiction. *Marston* v. *Gant*, 351 F. Supp. 1122, 1126 (1972). Whether a court in one state has jurisdiction over a party served by process in another state is a question which has troubled courts for many years. The answer seems to turn on whether or not there has been a denial of due process within the intendment of the Fourteenth Amendment to the Federal Constitution.

In *Pennoyer* v. *Neff*, 95 U.S. 714, 24 L.Ed. 565, the court held that before a forum could validly determine the personal liability of a defendant "he must be brought within its jurisdiction by service of process within the state or his voluntary appearance." As people and their business became more transitory, the "presence" theory of *Pennoyer* became too restrictive, and it was

gradually joined by the wider concept of "implied consent" where, under various circumstances, a nonresident defendant was held to have tacitly consented to local jurisdiction. *Hess* v. *Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, held that a nonresident defendant in the act of driving an automobile in the forum state could be said to have consented to service of process on the secretary of state as his agent. And *Henry L. Doherty & Co.* v. *Goodman*, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097, decided that the forum state exercised valid jurisdiction over the nonresident defendant where he was served through his agent who had been sent into that state to sell securities.

By 1945 the stage was set for *International Shoe Co.* v. *State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and its test of "fair play and substantial justice." Since that decision state legislatures, including the Virginia General Assembly, have enacted so-called "long arm" statutes, defining situations intended to satisfy that decision's "minimum contacts" criteria, and these statutes have, in turn, presented the courts with questions as to their applicability and constitutionality. *International Shoe* holds that "systematic and continuous" activities (as opposed to "irregular" or "casual") by a nonresident defendant in the forum state are operations which "establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice." *McGee* v. *International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 233 (1957), held "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that state."

The more recent case of *Hanson* v. *Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), indicates a desire to limit the application of these concepts by saying "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. . . However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has the 'minimal contacts' with that state that are prerequisite to its exercise of power over him." *Hanson* further provides that "it is essential in each case that there be some act by which the defendant purposefully avails itself

of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Neither party has presented a case with facts similar to the present case, and "the divergence of judicial opinion demonstrates that the holding in each case must rest upon an analysis of its own particular facts and circumstances." *Kolbe, Inc. v. Chromodern, Inc.,* 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971).

Having weighed and considered the evidence presented in this case in the light of these principles of law, the court concludes that Bruton has not *purposefully* availed himself of the privilege of conducting activities within Virginia, that if any activities were conducted by him they were casual and irregular (not systematic and continuous), and that, "minimum contacts" being lacking, the attempt to subject him to the jurisdiction of this court offends "traditional notions of fair play and substantial justice." Therefore, the plea in abatement is sustained and the motion for judgment, as it relates to Bruton, is dismissed without prejudice to the plaintiff to proceed again in a court having personal jurisdiction over Bruton.