**MEDECO SECURITY LOCKS, INC., Plaintiff,**

v.

**FICHET–BAUCHE, Defendant.**

**Civ. A. No. 82–0789.**

United States District Court, D. Virginia.

July 22, 1983.

---

Evans B. Jessee, Roanoke, Va., G. Franklin Rothwell, Bernard, Rothwell & Brown, P.C., Washington, D.C., for plaintiff.

William J. Creech, Jr., Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

Medeco Security Locks, Inc. brings this declaratory judgment action for declaration of non-infringement as well as declaration of invalidity of the defendant's U.S. Patent No. 4,316,371 which was issued to Fichet-Bauche on February 23, 1982 ("Patent No. '371"). Specifically, this case arises from a controversy concerning guard plates for security locks which are manufactured by Medeco. Medeco, a Virginia corporation, produces cylinder locks and cylinder lock plates. One of its products is sold under the trademark "BODYGUARD." Fichet, is a French corporation, which owns the '371 patent and the product covered by it which is sold under the trademark "SECURIM."

On July 8, 1982, Fichet, vis-a-vis its attorneys, mailed a letter to Medeco stating that Medeco's "BODYGUARD" and "Fichet's Multi-Plate Guard Assembly" bore striking similarities. That letter also informed Medeco that Fichet would sue for infringement of its patent if Medeco did not accept a license to produce and market its lock assembly. Needless to say, Medeco did not accept a license from Fichet. More pertinently, prior to institution of the "threatened" patent suit for infringement, Medeco filed this declaratory judgment action. The case is presently before the court on Fichet's motion to dismiss on the grounds that 1) the defendant is a corporation organized under the laws of France and is not subject to service of process within the Western District of Virginia by long-arm service or otherwise and 2) that the defendant has not been properly served with process in this action. Fichet moves alternatively to quash the return of service of summons on the above grounds.

Medeco, by way of affidavits of Ron N. Oliver and Lyndall L. Shaneyfelt, has presented the court with a list of contacts Fichet has had with the State of Virginia. Those contacts include:

1. Sales in Virginia of Fichet's "Secur-Bolt System Lock." Specifically, plaintiff has shown that one lock was bought by a Virginia resident in Falls Church, Virginia, and that Fichet Secur-Bolt Locks are available in the Washington, D.C. and Alexandria, Virginia areas. (See letter from Gene Howard, Customer Relations of Fichet, Inc. to Shaneyfelt, October 29, 1982, Plaintiff's Exhibit B). Medeco has also shown that a Fichet lock for commercial glass doors was in stock at an Alexandria safe and lock company. Other locksmiths and distributors in

northern Virginia, Richmond and Norfolk did not have Fichet locks in stock, but could order those locks upon request.

2. Placement of advertisements for the Fichet Secur-Bolt System Lock in national publications which are distributed and sold in Virginia. According to the publisher's statement for "Locksmith Ledger," a circular published monthly for purposes of serving the physical security industry, the paid circulation in the Commonwealth of Virginia for the May, 1981 issue was 463 subscriptions. The Fichet Secur-Bolt System Lock was repeatedly advertised in the Locksmith Ledger during 1982.

3. Mailing of a letter to Medeco at its Salem, Virginia, office, informing Medeco of Fichet's patent and of the striking similarities between the BODYGUARD and Secur-Bolt systems.

4. Creating apprehension in a Virginia corporation and being able to continue to produce and sell its product.

The court notes that no evidence has been presented by the plaintiff to contradict assertions by the defendant regarding its lack of contacts. Included in those uncontroverted assertions are the following:

1. Fichet has never maintained an official sales agent in Virginia;

2. Fichet neither owns nor leases property in this state;

3. Fichet has no bank account, office or telephone listing here;

4. Fichet has no agent, employee, or officers nor has any of its agents, employees, or officers conducted business in Virginia.

It is parenthetically noted that plaintiff filed an almost identical complaint for declaratory judgment of patent non-infringement and invalidity in the United States District Court for the District of Columbia on November 1, 1982 (Civil Action No. 82–3122). That action was filed six days after plaintiff filed his complaint in this district. On July 14, 1983, the District Court for the District of Columbia dismissed that action for lack of *in personam* jurisdiction.

The sole issue in this case is whether Fichet is subject to the jurisdiction of this court. Two approaches to analyzing the amount of contacts and for ascertaining whether this court has personal jurisdiction over Fichet have been suggested by the parties. The first approach focuses on the contacts with the Commonwealth of Virginia. This inquiry examines the quantity and quality of business transacted in this state. The alternative approach focuses not solely on the contacts with the State of Virginia but on the contacts Fichet has in the United States. Under this approach, it is argued that since this case involves a federal (patent) question, the issue of whether jurisdiction may be asserted over an alien defendant must be determined by reference to federal law. Federal law, as stated by the plaintiff, would allow jurisdiction to be determined on the basis of Fichet's aggregated contacts with the United States as a whole, regardless of whether the contacts with the state in which the district court sits would be sufficient if considered alone.

▪ Prior to analyzing the approaches suggested, and for purposes of review, the court notices the judicially mandated standard for reviewing questions regarding personal jurisdiction. The burden of proving jurisdiction rests with the plaintiff. *McNutt v. General Motors Acceptance Corporation,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Haynes v. James H. Carr, Inc.,* 427 F.2d 700, 704 (4th Cir.1970).

### I.

In analyzing whether this court may assert *in personam* jurisdiction over Fichet the court will first look to the contacts the defendant has with the Commonwealth of Virginia. Both parties identified the applicable section of the Virginia long-arm statute which would provide a jurisdictional basis for asserting jurisdiction over the defendant.[1] In short, that statute, Virginia

---

1. The pertinent parts of the Virginia Code provide:

A. A court may exercise personal jurisdiction over a person who acts directly or by an

Code § 8.01–328.1 (1950, as amended), provides for jurisdiction over non-resident defendants who transact business in the state of Virginia when the cause of action arises from such transaction. Both parties are correct in stating that the scope of the transacting business requirement of the Virginia long-arm statute is limited only by the parameters of due process. Those parameters have been defined by both the Virginia and the United States Supreme Courts. In particular, "it is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). *See John G. Kolbe, Inc. v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664 (1971) (It is necessary that some purposeful activity is engaged in by the defendant in this state.) With these judicial guidelines recited, the court inquires into the nature, quality, and quantity of contacts Fichet has with the state of Virginia to determine whether the minimum contacts standard required under the due process clause is fulfilled.

Plaintiff asserts that Fichet's contacts with Virginia are very similar to the contacts which were evaluated in *Antonious v. Kamata-Ri Limited,* 204 U.S.P.Q. 110 (D.Md.1979). In *Antonious,* a patent infringement case, the district court noted that there was evidence of sales in Maryland (although not substantial), that the foreign corporate defendant's American subsidiary had advertised the alleged infringing product nationally, the defendant had previously maintained a sales agent in Maryland, the defendant had made no effort to prevent sales of the infringing product in Maryland, and the defendant was familiar with the Maryland plaintiff's patent. While the *Antonious* case is instructive (as the plaintiff maintains), its lesson

does not necessarily teach *in personam* jurisdiction over Fichet. The sales evidenced in the *Antonious* case indicate significantly more contacts than the minimal sales of Fichet's products in Virginia. Moreover, neither Fichet nor its United States subsidiary, Fichet, Inc. of New York have a sales agent in the State of Virginia. Most importantly, the affidavits tendered by the plaintiff indicate the scarcity of contacts the defendant has with this state.

The plaintiff also argues that the defendant's communication with the plaintiff regarding the noticed "similarities" in the parties' two products is itself transacting business in this state. *See Medtronic, Inc. v. Mine Safety Appliance Company,* 468 F.Supp. 1132, 1147 (D.Minn.1979). In *Medtronic,* the defendant's communication with the resident plaintiff was not the only contact the defendant had with the forum state. On the contrary, the defendant's letter of infringement was one of several contacts that the court considered. In this case, the mailing of the letter to Medeco at its Virginia offices alone is not a contact significant enough to warrant the exercise of *in personam* jurisdiction. *See Cascade Corp. v. Hiab-Foca Ab,* 619 F.2d 36 (9th Cir.1980) (The mere writing of a letter even if considered threatening is not sufficient to establish minimum contacts with the forum state.); *Wesley-Jessen, Inc. v. Volk,* 200 U.S.P.Q. 795 (N.D.Ill.1976). Mere threat of patent infringement litigation does not constitute transacting business under long-arm statutes. *Id.,* at 797, n. 6. *Wesley-Jessen* cautions against reading *B & J Manufacturing, infra,* to hold such a contact sufficient to sustain minimum contacts.) *But see B & J Manufacturing Company v. Solar Industries, Inc.,* 483 F.2d 594 (8th Cir.1973) (In *B & J Manufacturing Company,* the writing and sending of the letter was considered as one of several extensive contacts that the corporate defendant had with the State of Minnesota. The nonresident corporation

agent, as to a cause of action arising from the person's:
1. transacting any business in this State;
2. contracting to supply services or things in this State;

B. When jurisdiction over a person is based upon this section, only a cause of action arising from such acts enumerated in this section may be asserted against him.
Va.Code § 8.01–328.1(A)(1), (2) and (B).

had considerable sales of the alleged infringing product and sold products other than patented items to distributors in the forum state.)

The court is also unimpressed, jurisdictionally speaking, with defendant's placing advertisements in national trade magazines which reach subscribers in the State of Virginia. *See Peter Griffin Woodward, Inc. v. Roadrunner, T.V.,* 545 F.Supp. 288, 290 (S.D.N.Y.1982). (Placing an advertisement in a magazine which circulates within the forum state is not *ipso facto* sufficient to establish personal jurisdiction). The court does not believe that it would be reasonable for Fichet to anticipate being brought into the courts of Virginia merely because advertisements extolling their products are contained in magazines which are read in Virginia.

■ The court does not believe that the sale of one Fichet product in the State of Virginia fulfills the minimum contact requirement. Furthermore, the court does not consider the failure of the defendant to prevent the sale of that product in this state as elevating that contact's jurisdictional value. Nor is the court persuaded that it should find the above mentioned contacts more jurisdictionally significant because of any apprehension which may have been brought to rest with Medeco in their future plans to manufacture and market their products. The above contacts neither singularly nor in totality satisfy the transacting business test prescribed by the Virginia General Assembly. Moreover, the above contacts do not constitute "minimum contacts" permitting this court to exercise jurisdiction over the defendant.[2]

## II.

Plaintiff posits an alternative theory upon which a finding of minimum contacts may be established. This alternative theory for testing contacts against Fifth Amendment standards has been articulated by Judge Newman of the District Court of Connecticut. *Chryomedics, Inc. v. Spembly, Limited,* 397 F.Supp. 287 (D.Conn.1975).

> When a federal court is asked to exercise personal jurisdiction over an alien defendant sued on a claim arising out of federal law, jurisdiction may appropriately be determined on the basis of the alien's aggregated contacts with the United States as a whole, regardless of whether the contacts with the state in which the district court sits would be sufficient if considered alone.

*Chryomedics,* 397 F.Supp. at 290. The rationale for the "aggregate contacts theory" or "national contacts theory" is two-pronged. First, this jurisdictional theory is predicated upon the premise that "it is not the territory in which the court sits that determines the extent of its jurisdiction, but rather the geographical limits of the unit of government of which the court is a part." *Chryomedics,* 397 F.Supp. at 291. The other consideration is that an alien might completely avoid suit in any state where sales in each state make up only a fraction of the nationwide market of the defendant's products. *Antonious, supra.* at 112.

The court notes that the aggregate contacts theory has received neither national acceptance nor Fourth Circuit approval. A fair appraisal of the theory would indicate that its application might be more sustainable in those cases where indeed the alien corporate defendant has only minimal sales or minimal contacts in each state. Even in those cases, though, the evaluating court would have to ascertain whether the maintenance of the action would offend "traditional notions of fair play and substantial justice."

■ In this case, the court finds the aggregate contacts theory unavailing. First of all, there are states in the United States in which Fichet has considerable and significant contacts. Fichet has indicated the significance of its contacts with the

---

**2.** Since this court finds that insufficient contacts exist under the transacting business requirement of Va.Code § 8.01–328.1(A)(1), it is unnecessary to determine whether the "arise from such acts" requirement of § 8.01–328.-1(B) is satisfied.

State of New York. Secondly, and most importantly, is the fairness to the defendant in requiring him to defend this action in this forum. Fifth Amendment due process constitutionally requires fairness to the defendant by Congress in providing a forum and by the judicial system in asserting the powers of its courts. It is constitutionally suspect to treat aliens differently from domestic residents. This court is unpersuaded by the rationale of the *Chryomedics* court that

> [t]he considerations are entirely different ... when an alien is involved ... which transacts business in the United States only through other companies, and which maintains a place of business only in the country of its incorporation. [That alien] has no reason based upon fairness to prefer any one particular district to any other.

*Chryomedics, Inc., supra* at 292. Considering either the single contacts or the totality of contacts that Fichet has with this forum it would be unfair to hale them before this court to defend this action.

In conclusion, the court finds that the plaintiff has failed to prove that this court has *in personam* jurisdiction over the defendant. After reviewing the contacts presented, the court further finds that Fichet's contacts with the State of Virginia are insufficient to satisfy the transacting business requirement of the Virginia long-arm statute. Since the transacting business requirement has been interpreted to be limited only by the parameters of due process, the court likewise finds that the minimum contacts requirement is not satisfied. Consequently, the court grants the defendant's motion to dismiss for lack of *in personam* jurisdiction. Accordingly an order shall be entered reflecting the above.