**SUPERFOS INVESTMENTS LIMITED, t/a Superfos Trading, Inc., Plaintiff,**

v.

**FIRSTMISS FERTILIZER, INC., Defendant.**

Civ. A. No. 91–293–N.

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 27, 1991.

John Y. Pearson, Jr. and Amy Lynn Moss, Willcox & Savage, P.C., Norfolk, Va., for plaintiff.

Kenneth H. Lambert, Jr. and Raymond Lee Hogge, Jr., Williams, Worrell, Kelly, Greer, Norfolk, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on Plaintiff's Motion to Dismiss for Lack of In Personam Jurisdiction and Improper Venue, or in the alternative, for the transfer of the action to a proper forum. For the reasons set out more fully below, Defendant's Motion to Dismiss is DENIED. However, Defendant's Motion to Transfer the case to a court having personal jurisdiction over the Defendant and proper venue is GRANTED.

### Facts

On or about April 1, 1988, Superfos Investments Limited [1] ("Superfos"), a Delaware corporation with its principal place of business in Virginia Beach, Virginia, and FirstMiss Fertilizer, Inc. ("FirstMiss"), a Mississippi corporation with its principal place of business in Jackson, Mississippi, entered into a contract for the purchase and sale of a liquid fertilizer called anhydrous ammonia (the "contract"). The contract required FirstMiss to purchase not less than eighty thousand (80,000) and not more than one hundred twenty thousand (120,000) tons of anhydrous ammonia (sometimes referred to as the "product") each year for the term of the contract, which was scheduled to terminate on December 31, 1990. Delivery of the product was accomplished by means of the Gulf Central Pipeline. The pipeline extends across several states and numerous suppliers and users have access to the product by opening and closing valves leading to and from the pipeline for a time period sufficient to allow the desired amount to enter or leave the pipeline.

Superfos purchased the product it sold to FirstMiss from Farmland, Inc. of Pollock, Louisiana ("Farmland"). It was delivered from Farmland's facilities in Louisiana directly to FirstMiss' facilities in Mississippi or Louisiana or to its customers outside Virginia. Therefore the anhydrous ammonia was never moved into, through or out of Virginia. The contract also required FirstMiss to prepare and deliver, on a quarterly basis, a forecast amount of anhydrous ammonia it intended to purchase from Superfos. Notice of the amount to be purchased, as well as any product orders, delivery instructions, complaints or problems

---

1. Superfos Investments Limited is the successor in interest to Superfos Kaichem, Inc., the original party to the contract at issue. For convenience, both companies are referred to as "Superfos".

regarding the quality or quantity of the product were all directed to Superfos' Virginia beach office. Monthly payments were to be made to a bank designated by Superfos. Superfos generally requested that payments be made to its Virginia bank account, but on at least three occasions, they required that payment be sent to banks in New York. Also, the parties agreed that the contract would be governed by the laws of the Commonwealth of Virginia.

Superfos alleges that in 1989 and 1990, FirstMiss purchased less than the minimum required amount of anhydrous ammonia and brought this diversity action against FirstMiss to recover damages arising from the alleged breach of contract. FirstMiss responded to Superfos' complaint with a Motion to Dismiss, or in the alternative, for a transfer of the action to a proper forum on the following grounds: (1) lack of personal jurisdiction over the Defendant; and (2) improper venue.

FirstMiss is a Mississippi corporation with its principal place of business in Jackson, Mississippi. All of its offices, plants and facilities are located in Mississippi and Louisiana. It is not presently, and has never been, qualified to do business in Virginia. Superfos initiated contract negotiations with FirstMiss at a conference held in West Virginia. All subsequent negotiations occurred by means of telephone calls, correspondence and facsimile transmissions between Mississippi and Virginia. At no time did any agent, employee or representative of FirstMiss travel to Virginia with respect to the contract negotiations or in connection with the administration of the contract once formed. The contract was drafted by Superfos and formed in Mississippi by virtue of FirstMiss adding the final signature in Jackson, Mississippi.

FirstMiss has never maintained any office, plant or distributor in Virginia nor has it ever had any personnel, employees[2], telephones or bank accounts in Virginia. It has never had a registered agent in Virgi-

nia. FirstMiss has never owned any real or personal property in Virginia or had equipment or assets in Virginia. It has paid no corporate income taxes or franchise taxes in Virginia. FirstMiss has advertised in Virginia only to the extent that advertisements placed in national trade journals may reach Virginia.

However, in addition to the contract at issue in this case, FirstMiss has been a party to three other sales transactions connected to Virginia. The first was a sale to Mobil Oil Co., a New York corporation with its principal offices in New York City, on March 31, 1990. The sale was arranged through Mobil's office in Richmond, Virginia. The product sold was shipped from FirstMiss' facilities in Mississippi to Mobil's facilities in Texas.

The second sales transaction involved FirstMiss and Southern States Cooperative, Inc. of Richmond, Virginia. Again the product sold never entered Virginia, it was delivered to Iowa and Kentucky from November 13, 1990 to June 20, 1991. This contract is now expired.

Finally, FirstMiss sold its product to Allied–Signal Inc., a Delaware corporation with its principal of business in Morristown, New Jersey. Here the product was shipped to Virginia at the request of Allied, but FirstMiss contends that the sale and transfer of title occurred in Louisiana, the terms of sale being F.O.B. Louisiana. This contract involved deliveries over the course of several months, which ended in October 1990. These contracts constitute approximately eight-tenths of one percent (.79%) of FirstMiss' overall sales. FirstMiss' additional sales efforts in Virginia consist of three sales calls by one salesman on August 7 and 8, 1990 and on May 15, 1991.

### Analysis

■ Generally, the analysis of *in personam* jurisdiction requires two steps. First, the Court must determine whether the activity of the defendant falls within the state's long arm statute. Second, the

---

**2.** This of course excludes the salesman who made sales calls in Virginia in August of 1990 and May of 1991.

Court must decide whether the exercise of personal jurisdiction would violate the Due Process Clause of the Fourteenth Amendment of the Constitution. *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir.1982). However, the Virginia Supreme Court has held that the Virginia Long Arm Statute, Virginia Code Ann. § 8.01–328.1 (1984 Repl.Vol. & Supp. 1991), extends personal jurisdiction to the full extent permitted by due process. *Id.; Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.*, 218 Va. 533, 534, 238 S.E.2d 800 (1977). Also, the scope of the "transacting business" requirement of the statute, § 8.01–328(A)(1), has specifically been construed to be limited only by the bounds of due process. *Bassett Furniture Industries, Inc. v. Sexton*, 596 F.Supp. 454, 456 (W.D.Va.1984); *Medeco Security Locks, Inc. v. Fichet–Bauche*, 568 F.Supp. 405, 408 (W.D.Va.1983). Therefore the only issue to be determined is whether FirstMiss' activities in Virginia are such that *in personam* jurisdiction may be exercised over it without violating due process. *Bassett Furniture*, 596 F.Supp. at 456.

In order to exercise *in personam* jurisdiction over a defendant, he must have certain minimum contacts with the forum such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The key factor is that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Therefore it is necessary to examine carefully the nature of FirstMiss' contacts with Virginia in order to determine whether it may be fairly subjected to suit. The Court will first address the activities in Virginia giving rise to this action and then discuss the

additional contacts with the Commonwealth unrelated to this action, as these different types of contacts [3] are judged by different standards. General jurisdiction requires "continuous and systematic" contacts with the forum. A less strict standard applies to specific jurisdiction. *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1130 (4th Cir.1986) (Ervin, J., dissenting); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984).

The burden of proving *in personam* jurisdiction rests with the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Medeco*, 568 F.Supp. at 407. Here Plaintiff Superfos asserts that FirstMiss' negotiation and performance of the contract with Superfos is sufficient to establish that FirstMiss has transacted business within the Commonwealth and is thus subject to the jurisdiction of the Court. As support for its contention, Superfos points out that Virginia's Long Arm Statute is a single transaction statute requiring only a single act of transacting business by the defendant within the state to support *in personam* jurisdiction. *I.T. Sales, Inc. v. Dry*, 222 Va. 6, 9, 278 S.E.2d 789 (1981); *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235, 1240 (E.D.Va.1977); *John G. Kolbe, Inc., v. Chromodern, Inc.*, 211 Va. 736, 180 S.E.2d 664 (1971). Superfos contends that its dealings with FirstMiss meet this requirement. However, the facts of this case do not support personal jurisdiction over FirstMiss based upon the contract.

Superfos argues that the negotiation of the contract by correspondence, telephone calls and facsimile transmissions to Virginia was held to be the transaction of business in *Peanut Corp. v. Hollywood Brands*, 696 F.2d at 314. However, it is generally held that mere phone calls and letters, and arguably fax communications,

---

**3.** Where personal jurisdiction is exercised over the defendant in a suit arising out of or related to the defendant's contacts with the forum, the forum is said to be exercising "specific jurisdiction". "General jurisdiction" is the exercise of

personal jurisdiction where the defendant's contacts with the forum do not give rise to or relate to the suit. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9, 80 L.Ed.2d 404 (1984).

in furtherance of a transaction are insufficient to form a basis for personal jurisdiction. *Unidyne Corp. v. Aerolineas Argentinas*, 590 F.Supp. 391, 396 (E.D.Va.1984) (telephone calls, telex messages and letters are insufficient basis for *in personam* jurisdiction); *Medeco*, 568 F.Supp. at 408 (mailing of letter by defendant to the forum is not contact sufficient for *in personam* jurisdiction); *Williams Crane & Rigging, Inc. v. B & L Systems, Ltd.*, 466 F.Supp. 956, 957 (E.D.Va.1979) (phone call and letter to forum do not warrant personal jurisdiction); *V & V Mining Supply, Inc. v. Matway*, 295 F.Supp. 643, 645 (W.D.Va.1969) (defendant responded by letter to plaintiff's advertisement in a trade journal). *Essex Crane Rental Corp. v. North Carolina Phosphate Corp.*, Civil Action No. 82–181–N Memorandum Order at 15 (E.D.Va. June 18, 1982) (Kellam, J.) (three phone calls not sufficient for *in personam* jurisdiction). Moreover, the court's statement in *Hollywood Brands* is taken out of context. Pivotal to the court's decision finding sufficient minimum contacts was the fact that Hollywood Brands regularly solicited business in Virginia and used brokers to sell its product. They also advertised in Virginia, derived substantial revenues from Virginia sales and purchased large amounts of peanuts for its product from Virginia corporations. *Hollywood Brands*, 696 F.2d at 314.

▮▮▮▮▮ Also, Superfos points out that the contract was prepared in Virginia and returned to Virginia once signed, and contends that this establishes sufficient contact with Virginia. However, "[d]ue process requires that there be more than a simple connection between the contract which is being sued upon and the state asserting jurisdiction." *In re August*, 17 B.R. 628, 630 (Bkrtcy.E.D.Va.1982), *rev'd on other grounds sub nom. August v. HBA Life Ins. Co.*, 734 F.2d 168, 173 (4th Cir.1984). A contract which is accepted and becomes effective in another forum generally will not satisfy minimum contacts. *Luke v. Dalow Industries, Inc.*, 566 F.Supp. 1470, 1472 (E.D.Va.1983); *see V & V Mining Supply*, 295 F.Supp. at 645; *Danville Plywood*, 218 Va. at 535, 238

S.E.2d 800. Finally, the Court finds Superfos' choice of law argument unpersuasive. FirstMiss did not submit to personal jurisdiction when it agreed that the contract would be governed by Virginia law.

These facts, along with the fact that Superfos solicited the contract with FirstMiss, that none of FirstMiss's employees or representatives ever came to Virginia to negotiate the contract terms, and that the product that was the subject of the contract was transferred from seller to buyer without ever passing through the state, Superfos' argument that FirstMiss' activities in negotiating the contract subject it to personal jurisdiction has little merit.

Superfos also argues that due consideration must be given to where the contract was performed. *Herbert v. Direct Wire and Cable, Inc.*, 694 F.Supp. 192, 194 (E.D.Va.1988). It contends that the majority of acts required by the contract, i.e., the delivery of product forecasts, payment of funds due and the giving of delivery instructions, were performed in Virginia and because of the substantial connection of the contract with the forum, the location of the anhydrous ammonia should not be determinative. *United Coal Co. v. Land Use Corp.*, 575 F.Supp. 1148, 1154 (W.D.Va. 1983). However, the fact remains that the product never entered Virginia. Moreover, the contract did not require FirstMiss to make payments in Virginia, but rather to a bank designated by Superfos. On at least three occasions the designated bank was in New York. No employees or representatives of FirstMiss travelled to Virginia to administer the terms of the contract. The delivery of product forecasts and delivery instructions to Virginia by telephone, letter and fax, as indicated previously, is not sufficient to support personal jurisdiction over FirstMiss.

Finally, Superfos contends that since the contract had approximately a two and one half year term, it meets the requirements of due process. However, the fact remains that it was a single contract with performance over a 2½ year period rather than a series of transactions. Despite the length of the contract term, all of the facts con-

cerning the formation and performance of the contract indicate that the contract itself was not substantially related to Virginia.

Therefore the Court finds that Superfos has failed to establish that FirstMiss has purposely availed itself, with respect to the contract at issue, of the laws and protections of Virginia. The Court, therefore cannot exercise specific jurisdiction over FirstMiss.

 However, the analysis of First-Miss' contacts with the Commonwealth does not end here. "Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the Forum State, due process is not offended by the States subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872. These contacts must be "continuous and systematic" in order to support general personal jurisdiction over FirstMiss. First-Miss was involved in three other contracts related to Virginia, as well as three sales calls in Virginia and advertisements placed in trade journals. Based upon the circumstances of these contracts, sales calls, and advertisements, the Court concludes that these additional contacts with the state are not sufficient to support *in personam* jurisdiction.

 It is clearly established that First-Miss has few contacts with Virginia. It is not qualified to do business in the state and does not maintain any type of facility or any personnel here. It has never owned any real or personal property in Virginia and has paid no income or franchise taxes. FirstMiss did place advertisements in national trade journals that may reach Virginia. However, "[m]ere advertising in a periodical is not purposely availing oneself of the privilege of conducting activities in every state where it might be published or read." *Processing Research, Inc. v. Larson*, 686 F.Supp. 119, 123 (E.D.Va.1988); *see Medeco*, 568 F.Supp. at 409.

The sales calls by a FirstMiss salesman on August 8 and 9, 1990 and on May 15, 1991 also fail to meet the requirements of due process. The sales calls did not result in any sales agreements, moreover, three days of promoting its product clearly is not the continuous and systematic transaction of business. *See Luke*, 566 F.Supp. at 1472.

Finally as to the contracts themselves, they are similar to the contract giving rise to this suit in that they are only tangentially related to Virginia. The first, a sale to Mobil Oil Co. in March of 1990, was related to Virginia only in that the sale was arranged through Mobil's Richmond office. The product was not shipped to or from Virginia. The second sales contract involved Southern States Cooperative of Richmond, Virginia. However, that contract is now expired and again the product sold never entered the state. The third contract has also expired. There FirstMiss shipped the product to Virginia, F.O.B. Louisiana, at the request of the buyer, Allied–Signal. These three contracts represent less than one percent (1%) of First-Miss' total sales.

It is apparent from the facts presented that FirstMiss' contacts with Virginia do not rise to the level of "continuous and systematic" as required by due process. Its relationship to the state consists of three contracts only tangentially related to Virginia, none of which are now in effect, and from which FirstMiss did not gain any substantial percentage of its total revenue, and sales calls which did not result in new business for the company. Accordingly, the Court finds that it may not exercise *in personam* jurisdiction over Defendant FirstMiss.

 However, the Court's lack of personal jurisdiction over FirstMiss does not require dismissal of the action. This Court has the power to transfer this matter pursuant to 28 U.S.C. § 1404(a). *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962); *Chedid v. Boardwalk Regency Corporation*, 756 F.Supp. 941, 944 (E.D.Va.1991). Section 1404(a) reads:

For the convenience of the parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) (1988).

The interests of justice are served by transferring the action to a proper forum rather than dismissing it for lack of personal jurisdiction. Accordingly, FirstMiss' Motion to Transfer this action to a court having personal jurisdiction over it and having proper venue is GRANTED.

## Conclusion

In conclusion, Plaintiff Superfos has failed to establish that FirstMiss has the minimum contacts with Virginia necessary to satisfy the requirements of due process, both with respect to the contract which gave rise to this action, as well as in connection with FirstMiss' other activities in Virginia. Therefore, Defendant's Motion to Dismiss for Lack of In Personam Jurisdiction is DENIED, but in the interest of justice, the Motion to Transfer the action to a forum with personal jurisdiction and proper venue is GRANTED. It is hereby ORDERED that this case be transferred to the Southern District of Mississippi, Jackson Division, in Jackson, Mississippi.