# CIRCUIT COURT OF CHESTERFIELD COUNTY

PCR Tech. Holdings, L.C.

    v.

Bell Ventures, L.L.C.,
BD Partners, L.L.C.,
Bell Advisory Services, L.L.C.,
David Bell,
and Boxin Ou

June 2, 2009

Case No. CL09-382

BY JUDGE HERBERT C. GILL, JR.

    This matter came before the Court on May 29, 2009, upon Defendants' Special Appearance to Move to Dismiss for Lack of Personal Jurisdiction. Upon review of the relevant statutes, case law, and filings of the parties, the Court now issues its ruling.

    The different Bell Companies and Mr. Bell (collectively "Defendants") claim the Court lacks personal jurisdiction over them under the Virginia long-arm statute, Va. Code § 8.01-328.1, and under the Due Process Clause of the United States Constitution. Further, the Defendants argue that the Mutual Confidentiality Agreements ("MCAs"), upon which the Plaintiff relies in part for *in personam* jurisdiction, dealt solely with the preliminary negotiations and do not control the oral agreement out of which the Plaintiff's causes of action arise.

A. *Personal Jurisdiction under the Long-Arm Statute*

To begin with, the Bell Companies are all limited liability corporations incorporated in Delaware with their principal place of business in Massachusetts, and Mr. Bell is a resident of Massachusetts. The claims made by the Plaintiff all arise out of an oral agreement made by the parties in New York to form a joint venture company ("Newco"). The Plaintiff alleges that the parties all understood that and intended for Newco to be a Virginia entity, with the Plaintiff as the majority owner. Further, the Plaintiff argues that at least one person involved in the formation of the joint venture agreement was present by telephone from Virginia and that communications that led to the Plaintiff's claims occurred by telephone and e-mail between the parties while Plaintiff was present in the Commonwealth of Virginia.

Determining whether the Court has personal jurisdiction under the long-arm statute is a two-step process. The Court must first determine whether the Defendant's alleged conduct supports jurisdiction under Va. Code § 8.01-328.1. Next, the Court determines whether the exercise of jurisdiction is consistent with the Due Process Clause.

While PCR Technology Holdings did not specify the particular subsection of the Virginia long-arm statute under which personal jurisdiction is asserted in their Complaint, it appears from the memoranda regarding personal jurisdiction that the relevant subsection is (A)(1), which states "a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." The Supreme Court of Virginia has clarified that "[s]ince the statute provides 'Transacting *any* business. . .' it is a single act statute requiring only one transaction in Virginia to confer jurisdiction on its courts," *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971) (emphasis in original) (citations omitted); see also *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319, 512 S.E.2d 560, 562 (1999), and *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.*, 218 Va. 533, 534-35, 238 S.E.2d 800, 802 (1977), and, further, that this single act must be "a substantial transaction of business within this [Commonwealth]." *John G. Kolbe, Inc.*, at 741, 180 S.E.2d at 668.

The Supreme Court of Virginia has stated that "the function of our long-arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause," *Krantz v. Air Line Pilots Assoc., Int'l*, 245 Va. 202, 205, 427 S.E.2d 326, 328 (1993) (citing *Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255, 259, 377 S.E.2d 388 391, cert. denied 492 U.S. 921, 109 S. Ct. 3248,

106 L. Ed. 2d 594 (1989)), and this principal informs the Court's statutory interpretation. Thus, we consider whether a given interpretation of the long-arm statute would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). The Defendants must have "certain minimum contacts"[1] with the Commonwealth sufficient to permit jurisdiction. We focus on "the relationship among the defendant[s], the forum, and the litigation" to make this determination.

The Supreme Court of the United States has stated that "to the extent that a corporation exercises the privileges of conducting activities within a state, it enjoys the benefits and protections of the laws of the state." *International Shoe*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945), quoted by *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 738-39, 180 S.E.2d 664, 666 (1971). The essential consideration is whether "there [is] some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State. . . ." *Hanson v. Denckla*, 357 U.S. 235, 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958), quoted by *John G. Kolbe, Inc.*, at 739, 180 S.E.2d at 666. Further, in cases where a contract is the basis of claims, "due process requires that there be more than a simple connection between the contract which is being sued upon and the state asserting jurisdiction." *Superfos Invs., Ltd. v. Firstmiss Fertilizer, Inc.*, 774 F. Supp. 393, 398 (E.D. Va. 1991) (quotation omitted). Thus, without further contacts between the contract and the forum jurisdiction, "[a] contract which is accepted and becomes effective in another forum generally will not satisfy minimum contacts." *Id.* (quotations omitted).

The Plaintiff did not allege that the Defendants have ever maintained any office, plant, or distributor in Virginia, nor that they have had any personnel, employees, telephones, or bank accounts in Virginia. See *Superfos Invs., Ltd. v. Firstmiss Fertilizer, Inc.*, 774 F. Supp. 393, 396 (1991). Further, the Plaintiff has not alleged that the Defendants have ever owned real or personal property in Virginia, had equipment or assets in Virginia, or paid corporate taxes or franchise taxes in Virginia. See *id.* There is no allegation that the Defendant corporations have ever been qualified to do business in Virginia nor that any of the Defendants, their employees, or agents have ever traveled to Virginia in connection with the contract negotiations or

---

[1] *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

performance of the contract in question or that the Defendants initiated the contact with the Plaintiff, a Virginia corporation. There can be no question that the Defendants never purposely availed themselves of any Virginia institutions, and it cannot be said that they could have reasonably foreseen that they would be haled into Virginia court as a result of their actions.

Therefore, the Court holds that personal jurisdiction over Bell Ventures, L.L.C., BD Partners, L.L.C., Bell Advisory Services, L.L.C., and David Bell is not proper under the Virginia long-arm statute nor under the Due Process Clause of the Fourteenth Amendment of the federal constitution.

## B. *Personal Jurisdiction under the MCAs' Forum Selection Clause*

PCR Technology Holdings also relies upon the Mutual Confidentiality Agreements (MCAs), dated July 16 and July 21, 2008, as the basis for personal jurisdiction before this Court over the Defendants. The Court will only consider the Agreement dated July 21, 2008, as it clearly states that it "supersedes in its entirety all prior agreements . . . between the Parties regarding the specific subject matter of this Agreement." Pl.'s Mem. in Opp'n to Defts.' Mot. To Dismiss for Lack of Pers. J., Ex. C "Mutual Confidentiality Agreement" ¶ 11 (July 21, 2008).

Three facts were not in dispute between the parties. First was that the causes of action asserted by the Plaintiff do not arise directly out of the Agreement itself, but instead from the oral agreement between the parties that arose from the negotiations that the MCA was intended to protect. Second was that the Plaintiff and the Defendants were the parties named in the MCA. Finally, the third fact not disputed was that the Plaintiff drafted the MCA.

In determining whether the Defendants agreed to be subject to personal jurisdiction in the Commonwealth, the Court considers particularly paragraphs 7, 8, and 11 of the MCA. The language PCR Technology Holdings relies upon is Paragraph 8, which states:

> This Agreement will be governed by the laws of the Commonwealth of Virginia . . . [and f]or the purpose of all legal proceedings and dispute resolution, the Parties irrevocably submit to the jurisdiction of the courts of the Commonwealth of Virginia in Chesterfield County, Virginia, and of the United States of America for the Eastern District of Virginia, Richmond Division.

*Id.* ¶ 8.

This language clearly and unambiguous shows that the Bell Companies consented to personal jurisdiction in this Court as to the MCA.

However, Paragraph 11 expressly states that "[t]his Agreement is the complete, entire, and exclusive agreement of the Parties hereto regarding the specific subject matter of this Agreement . . . [and] may only be amended . . . by a writing signed by the Parties or their respective successors, assigns, or authorized representatives." *Id.* ¶ 11.

The Plaintiff was unable to show that the Bell Companies had entered into any written agreement with PCR Technology Holdings incorporating the terms of the MCA into a later agreement, amending the MCA to incorporate the latter oral agreement or otherwise extending the choice of law and forum selection clauses of Paragraph 8 beyond the expressed scope of the MCA. That scope being to allow for the exchange of and protect "each Party's proprietary and confidential information"[2] as they began "discussing and negotiating a series of proposed business transactions . . . which may involve a subsequent joint venture, teaming agreement, the formation of a new company, or other agreement for marketing, sale, distraction, manufacture, and/or production of products . . . and for no other purpose whatsoever." *Id.* ¶ 2. While this MCA contemplated the outcome of the negotiations including an agreement to create a joint venture company, it did not include any latter agreements within its scope.

Further, Paragraph 7 specifically states that "[n]othing in this Agreement . . . shall be construed in any way as obligating the Parties to . . . enter into any further agreement with . . . one another." *Id.* ¶ 7. The Court cannot imply, especially in the face of the pertinent language from Paragraph 7, that the Bell Companies or PCR Technology Holdings intended any clause of this agreement to be binding in subsequent agreements without specific language to that express intent.

Therefore, in consideration of the MCA as a whole, the Court holds that the Mutual Confidentiality Agreements do not confer personal jurisdiction over Bell Ventures, L.L.C., BD Partners, L.L.C., Bell Advisory Services, L.L.C., or David Bell in the present action.

---

[2] *Id.* ¶ 1(a).