**AFRICAN DEVELOPMENT COMPANY, LTD., Plaintiff,**

v.

**KEENE ENGINEERING, INC., Defendant.**

Civil Action No. 2:96cv1160.

United States District Court, E.D. Virginia, Norfolk Division.

April 17, 1997.

---

David Neil Ventker, Andrew Christopher Carington, Huff, Poole & Mahoney, P.C., Virginia Beach, VA, for plaintiff.

Wendy Tara Cohen, Hunton & Williams, Norfolk, VA, Gregory N. Stillman, Kevin Joseph Cosgrove, Hunton & Williams, Norfolk, VA, for defendant.

## *MEMORANDUM OF OPINION AND ORDER*

JACKSON, District Judge.

Plaintiff, a resident of Virginia, brings this diversity action for breach of warranty and contract against Defendant, a California resident. Defendant has filed a motion to dismiss, asserting that this Court lacks personal jurisdiction over it. Plaintiff filed its complaint on November 27, 1996. On January 24, 1997, Defendant filed a motion, with accompanying brief, under Federal Rule of Civil Procedure 12(b) to dismiss the complaint for lack of personal jurisdiction. Plaintiff filed its brief in opposition on February 7, 1997. Defendant filed a reply brief on February 12, 1997. The Court heard oral argument in the matter on March 19, 1997. Consequently, the matter is ripe for judicial determination. For the reasons that follow, the Court **DENIES** Defendant's motion to dismiss for lack of personal jurisdiction.

## I. FACTS

Plaintiff is a Bermuda corporation with its primary offices in Virginia Beach, Virginia, which was engaged in mining operations in Zaire. Defendant is a California corporation with its principal place of business in California, which manufactures and sells mining equipment. The first contact between Plaintiff and Defendant was on or about March 9, 1993. Chris Lodder, a mining consultant in Canada and a representative of Plaintiff, ordered a dredge and miscellaneous mining equipment from Defendant for $6,067.00. The equipment was shipped to the CBN Center in Virginia Beach COD. This transaction is not the subject of this lawsuit.

At some time after commencement of its operations in Zaire, Plaintiff received a catalog containing a toll-free number for long distance calls, offering mining equipment for sale from Defendant. Defendant argues that this catalog was sent pursuant to a procedure of mailing catalogs to customers of the previous year. Additionally, Defendant allegedly sent a video tape promoting the sale of a dredge called "Nessie" along with a descriptive brochure and pricing schedule. Plaintiff alleges that in response to Defendant's efforts, Plaintiff contracted for the purchase of a total of six dredges and related equipment. Plaintiff has submitted an affidavit that states that each dredge was to be delivered to Virginia as indicated on the purchase orders.

According to the complaint, the Plaintiff placed an order for the purchase of a dredge on or about May 9, 1994. Plaintiff paid to Defendant $42,068 for the dredge and other equipment needed to operate the dredge. Defendant's affidavit states that this dredge was delivered to Plaintiff's agent in California. Plaintiff indicates that the delivery destination changed from Virginia to California pursuant to a request made by Plaintiff for its convenience.

On or about September 22, 1995, Plaintiff transmitted a facsimile order for a second dredge. By bank wire transfer, Plaintiff paid to Defendant $45,328 for the second dredge and the equipment needed to operate it. Defendant's affidavit states that this dredge was to be delivered to Africa but at the last minute, Plaintiff instructed Defendant to reroute the shipment to Portsmouth, Virginia, and Defendant complied. The purchase order indicates that shipping was to be made to Virginia.

On or about October 19, 1994, before Plaintiff had received the first two dredges, Plaintiff placed a third order with Defendant by which it requested four additional dredges. Plaintiff paid to Defendant $189,450 for the last four dredges.

Plaintiff alleges that upon receipt of the first two dredges, they were discovered to be defectively designed and manufactured. As a result of the alleged defects, Plaintiff states that it was required to expend thousands of dollars in an attempt to repair the dredges. On or about February 3, 1995, after numerous attempts to repair the first two dredges, Plaintiff concluded that the dredges were inadequately designed to perform as advertised. As a result, Plaintiff requested that Defendant retain the four unshipped dredges and refund the purchase price. As of the date of the complaint, Defendant had not shipped the dredges and has refused to refund the purchase price to Plaintiff.

Defendant argues that it did not solicit business from Plaintiff in Virginia, or anywhere. Conversely, Defendant argues that Plaintiff initiated contact with Defendant. There was no written contract for any of these transactions other than the invoices generated by Defendant in its California office. All payments were mailed to Defendant in California. Some of these payments were drawn on a bank account in the Bahamas. No employee of Defendant ever traveled to Virginia concerning the subject matter of this dispute.

Defendant does not maintain any offices in Virginia, has no employees in Virginia, has no registered agent in Virginia, no bank account, real or personal property in Virginia, has never paid nor been assessed taxes in Virginia, and has never made a service call in Virginia. Defendant does not conduct any direct advertising in Virginia.

## II. LEGAL STANDARD

### A. Plaintiff's Burden of Establishing Personal Jurisdiction

When a court's personal jurisdiction is challenged by a motion under Federal Rule

of Civil Procedure 12(b)(2), the jurisdictional question is one for the court, with the burden on the plaintiff to prove the grounds for jurisdiction by a preponderance of the evidence. "Yet, when ... the district court decides a pretrial personal jurisdiction motion without an evidentiary hearing, the plaintiff need only prove a prima facie case of personal jurisdiction. In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the court must draw all reasonable inferences arising from the proof and resolve all factual disputes in the plaintiff's favor." *Mylan Laboratories, Inc. v. Akzo, N. V,* 2 F.3d 56, 60 (4th Cir.1993). Under Rule 12(b)(2), the accepted practice is to consider the extra-pleading material rather than accept the allegations of the complaint as true. *See Wilson–Cook Medical, Inc. v. Wilson,* 942 F.2d 247, 253 (4th Cir.1991)(accepting, without direct comment, district court's consideration of affidavits in ruling on 12(b)(2) motion to dismiss); *Mylan,* 2 F.3d at 60–62 ("district court correctly looked at proffered proof" in ruling on motion to dismiss for lack of jurisdiction under 12(b)(2)).

█ Although it is true that a plaintiff opposing a Rule 12(b)(2) motion to dismiss for lack of jurisdiction is entitled to have all reasonable inferences from the parties' proof drawn in his favor, district courts are not required to look solely to the plaintiff's proof in drawing these inferences. *Id.*

## B. Personal jurisdiction.

A two-prong test governs an analysis of in personam jurisdiction. The first prong requires that the activity of the defendant fall within the reach of Virginia's long arm statute, Virginia Code § 8.01–328.1. The second prong requires that the defendant have minimum contacts with the state so that the exercise of jurisdiction does not offend basic notions of due process. *See Wolf v. Richmond County Hospital Authority,* 745 F.2d 904, 909 (4th Cir.1984), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985). However, under case law, the long-arm statute extends personal jurisdiction to the limits of due process. *See Peanut Corp. of America v. Hollywood Brands, Inc.,* 696 F.2d 311, 313 (4th Cir.1982); *Danville Plywood Corp. v. Plain and Fancy Kitchens, Inc.,* 218 Va. 533, 238 S.E.2d 800 (1977); *John G. Kolbe, Inc., v. Chromodern Chair Co.,* 211 Va. 736, 180 S.E.2d 664, 667 (1971). Thus, there exists only one issue to be determined; that is, whether Defendant's activities in Virginia are such that in personam jurisdiction may be exercised without violating due process. *See, e.g., Federal Insurance Co. v. Lake Shore, Inc.,* 886 F.2d 654, 657 n. 2 (4th Cir.1989); *Superfos Investments Ltd. v. FirstMiss,* 774 F.Supp. 393, 397 (E.D.Va.1991).

The due process clause of the United States Constitution requires that a defendant have "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimum contacts exist when the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In order for a court's jurisdiction to be proper, "it is essential ... that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Danville Plywood Corp. v. Plain & Fancy Kitchens,* 218 Va. 533, 238 S.E.2d 800, 802 (1977), *quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

In recent cases, the Supreme Court has developed a distinction between specific jurisdiction and general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). If the contacts with the forum are rare or limited but directly related to the cause of action, then the court's specific jurisdiction can be used to subject a defendant to suit in that court. *Id.* If a nonresident engages in some purposeful activity in the forum state, even a single act may constitute sufficient contact for a court to exercise personal jurisdiction. *Darden v. Heck's, Inc.,* 459 F.Supp. 727 (W.D.Va.1978).

On the other hand, if defendant's activities within the forum state are substantial and pervasive, the court may exercise general jurisdiction over the defendant. *Helicopteros*, 466 U.S. at 415–16, 104 S.Ct. at 1872–73.

## III. DISCUSSION

At the outset, the Court acknowledges Defendant's assertion at oral argument that there are discrepancies between the facts as stated in the complaint and those stated in an affidavit attached to Plaintiff's brief in opposition to Defendant's motion to dismiss. The Court also notes that there are discrepancies between the facts as proffered by the parties. In determining whether personal jurisdiction exists over a defendant when deciding a motion to dismiss, the court must draw all reasonable inferences arising from the proof and resolve all factual disputes in the plaintiff's favor.

Plaintiff's argument for personal jurisdiction over the defendant only addresses specific jurisdiction. Plaintiff states that it relies on specific jurisdiction because, without the benefit of discovery, it does not want to rely upon a claim of general jurisdiction. Thus, this Court's analysis of personal jurisdiction is limited to whether specific jurisdiction exists over the defendant.

In *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044 (4th Cir.1988), a Virginia corporation sued a Florida company in Virginia for damages related to allegedly defective equipment. The defendant had advertised the equipment in a nationally distributed magazine and the equipment was installed in the Virginia company's place of business in Mexico. The court held that the required minimum contacts were present, citing defendant's solicitation of business in Virginia by way of advertisement in the nationally distributed magazine, negotiation and acceptance of a contractual obligation with a Virginia resident. The court also noted defendant's mailing of purchase orders and continued telephonic and written interaction with plaintiff in Virginia after the sale between the parties had been completed.

In *Chung v. NANA Development Corp.*, 783 F.2d 1124 (4th Cir.1986), the court reversed the Virginia district court's exercise of personal jurisdiction over a seller of goods for lack of minimum contacts. Chung, a Virginia resident, had initiated contact with NANA, an Alaskan corporation, inquiring about the purchase of reindeer antlers. After negotiating a price, NANA informed Chung that he would have to take delivery in Nome, Alaska; Chung agreed to those terms. Chung later traveled to Alaska and purchased 500 pounds of antlers, paying NANA with a cashier's check and a personal check. Although the parties in *Chung* originally contemplated that Chung would take delivery of all 500 pounds of the antlers, only 120 pounds were available when he was to return to Virginia. The parties arranged to have the remainder shipped to Chung in Virginia.

The court, in holding that the defendant's contacts with Virginia were insufficient to create personal jurisdiction, noted that "the only link offered between the defendant and the forum state [was] so unique and unsolicited that to sustain jurisdiction would inevitably trench upon the personal liberty the Constitution safeguards." *Id.* at 1127. The court said that "jurisdiction could not be manufactured by the conduct of others," but rather the defendant must purposefully avail itself of some benefit of the forum state. *Id.*

The Court finds the case at bar more analogous to *Cancun* than any of the other cases cited by the parties. First, Defendant sent its 1994 catalog, which contained a toll free number for out-of-state orders, to a representative of Plaintiff in Virginia. Although Defendant argues that it only sent the catalog to Plaintiff because of the 1993 order placed by Plaintiff, the reason behind the mailing does not change the fact that Defendant actively sought additional business with Plaintiff.

Both *Cancun* and the case at bar involve bilateral activity; that is, both Plaintiff and Defendant were active parties to the contracts, rather than the resident taking on the role of pursuer as was the case in *Chung*. Plaintiff claims that it purchased the dredge Model 8080D, which is the subject of this dispute, because of the representations in the catalog and the many and frequent assurances provided by Defendant during tele-

phone calls to Virginia and correspondence sent to Virginia. Those assurances are further evidence of an intent to actively pursue business with a Plaintiff located in Virginia.[1] Additionally, the relationship between Plaintiff and Defendant was not an isolated, one-time arrangement; the relationship continued for over a year, with Plaintiff purchasing from Defendant in at least three separate transactions.

■ Although the parties disagree as to the original destination of the dredges, each invoice, apparently produced by Defendant, lists Virginia as the destination of the dredges on the line for "Ship to." *See Affidavit of M.G. Robertson, Exhibits A* (3/93), D (9/94) and E (10/94). On or about September 1994, one of the dredges scheduled for shipment per invoice to Virginia Beach was actually shipped to Portsmouth, Virginia. Additionally, exhibits C and F, attached to the Robertson affidavit, show that the payments were drawn on a Virginia bank and Plaintiff sent at least one payment from Virginia. Finally, Keene derived approximately $277,000 from doing business in Virginia with African Development. (*Affidavit M.G. Robertson, para. 8 and 12*.)

Defendant attempts to distinguish itself from the defendant in *Cancun* on the basis that it did not "actively pursue" a business relationship with Plaintiff, but rather responded to Plaintiffs inquiries. However, in focusing on who initiated the contact, Defendant minimizes its purposeful availment of benefits of doing business with a Virginia company. Defendant, unlike the Defendant in *Chung*, did not seek to minimize its contact with Virginia by, for example, requiring Plaintiff to take delivery of goods only in California. Moreover, the extensive telephonic communication involving advice about the equipment and the solicitation of additional business from Plaintiff by mailing them a catalog further distinguishes this case from *Cancun*.

In sum, the Court finds that Defendant has sufficient contacts with Virginia to be subject to suit in this jurisdiction. The Court notes the ongoing nature of the business relationship between the parties, the efforts of Defendant in maintaining and nurturing that business relationship, and the resulting foreseeability of suit in this forum. Accordingly, for the above-mentioned reasons, the Court hereby **DENIES** Defendant's motion to dismiss for lack of personal jurisdiction.

## IV. CONCLUSION

For the above-mentioned reasons, the Court hereby **DENIES** Defendant's motion to dismiss for lack of personal jurisdiction.

IT IS SO **ORDERED.**

---

1. The Court is mindful that these communications alone are insufficient to establish personal jurisdiction, however, they are helpful in ascertaining the intent of Keene to do business in Virginia. *See Superfos,* 774 F.Supp. at 398 (holding that mere telephone communications are not enough to establish personal jurisdiction over Defendant).