UNITED STATES of America,
Plaintiff,

v.

Burt G. MAXWELL, Virginia Maxwell,
and Beatrice W. Adcock,
Defendants.

In re: the Real Property and Premises
Known as 6500 Carriage Drive,
Alexandria Virginia.

No. CIV.A. 01–1017–A.
No. CR. 99–329–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

March 21, 2002.

Gordon D. Kromberg, U.S. Attorney's Office, Alexandria, VA, for Plaintiff.

Marvin David Miller, Alexandria, VA, for Defendants.

## MEMORANDUM OPINION

CACHERIS, District Judge.

The primary issue presented in this case is a novel one: whether the Government, having (1) included a forfeiture count in the defendant's indictment; (2) been notified in general terms of the conveyance of the defendant's real property prior to sentencing; (3) already received a ruling regarding the defendant's ability to pay a fine; and (4) failed to formally attack the validity of the conveyance at the defendant's sentencing hearing, is now prevented from challenging the conveyance as fraudulent in a subsequent civil proceeding. For the reasons stated herein, the Court holds that the doctrines of collateral estoppel and res judicata are not applicable to the instant civil action. Having found Defendants' other arguments similarly inapplicable, the Court will deny their Motion to Dismiss.

### I.

Defendant Burt Maxwell and his mother-in-law, Defendant Beatrice Adcock ("Adcock"), purchased real property located at 6500 Carriage Drive, Alexandria, Virginia 22310 (the "Carriage Drive Property") on or about August 26, 1986, for approximately $116,500. (Pl.'s Opp'n to Mot. to Dismiss at 1.) Defendant Burt Maxwell was indicted on or about September 16, 1999, for conspiracy to distribute marijuana. (*Id.*) The indictment alleged that, in the event of his conviction, Maxwell would be required to forfeit, *inter alia,* $500,000 in proceeds obtained as a result of the alleged criminal activity. (*Id.*)

Burt Maxwell appointed his wife, Defendant Virginia Maxwell, as his attorney-in-fact on or about November 26, 1999, prior to pleading guilty to the conspiracy charge before United States District Judge Gerald Bruce Lee on December 6, 1999. (*Id.* at 2.) Judge Lee took the issue of a forfeiture money judgment under advisement and ordered the parties to brief the issue, stating that his decision would be made on the papers following the submission of the defendant's reply brief on December 20, 1999. (*Id.*)

On or about February 9, 2000, Virginia Maxwell, in her capacity as attorney-in-

fact for Burt Maxwell, sold Burt Maxwell's interest in the Carriage Drive Property to Adcock for approximately $71,342. (*Id.*) Two days later, on February 11, 2000, Judge Lee ordered that Burt Maxwell be required to forfeit $144,000 in drug proceeds obtained during the course of the conspiracy. (*Id.*) Burt Maxwell was sentenced on March 24, 2000. Having sold his interest in the Carriage Drive Property only a month before, Burt Maxwell held no assets from which to satisfy the $144,000 money judgment at the time of sentencing. (*Id.*)

The Government, alleging that the conveyance of the Carriage Drive Property was fraudulent, and that it was done in order to avoid payment of the impending money judgment expected to be issued by Judge Lee, filed the instant civil action against Burt Maxwell, Virginia Maxwell, and Adcock (collectively the "Defendants") on June 28, 2001. Specifically, the Government seeks avoidance of the transfer pursuant to 28 U.S.C. §§ 3304(b) and 3306(a) (Count I), and pursuant to Virginia Code §§ 55–80 and 55–81 (Count II). Defendants now move for dismissal of this action.[1]

## II.

In challenging the Complaint, Defendants argue that: (1) Virginia Maxwell is not a proper party to this action because her role in the transaction was solely that of an agent acting on behalf of Burt Maxwell; (2) the allegations of fraud are not sufficient to satisfy the heightened pleading requirement contained in Rule 9(b) of the Federal Rules of Civil Procedure; (3) the transfer in question was not fraudulent because it was intended to satisfy a pre-existing debt and was made prior to the entry of the forfeiture judgment against Burt Maxwell; (4) there was no lien, *lis pendens,* or other restraints on alienation placed on the property from the time of Burt Maxwell's indictment in September 1999 until June 2001, when the instant civil action was filed; and (5) the Government is estopped from proceeding with the instant action because it had notice of the transfer as a result of uncontested statements contained in the pre-sentence report (the "PSR"), which was adopted by Judge Lee at the sentencing hearing, and which it failed to challenge as fraudulent under the relevant civil statutes at that time. The Court will address each argument in turn.

### A.

Defendants' first four arguments are relatively straightforward, and therefore do not require extensive analysis.

#### 1. Rule 12(b)(2)

First, in considering whether the Government has established a *prima facie* case against Virginia Maxwell, the Court notes as follows:

> [W]hen ... the district court decides a pretrial personal jurisdiction motion without an evidentiary hearing, the plaintiff need only prove a prima facie case of personal jurisdiction. In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the court must draw all reasonable inferences arising from the proof and resolve all factual disputes in the plaintiff's favor.

1. This motion is brought on behalf of Virginia Maxwell and Beatrice Adcock, both of whom are represented by Mr. Miller. Defendant Burt Maxwell has entered an appearance *pro se* in which he incorporates by reference the arguments made by Mr. Miller on behalf of Virginia Maxwell and Beatrice Adcock. The Court will therefore treat Mr. Miller's arguments as being made on behalf of all three defendants for purposes of this motion.

*African Dev. Co., Ltd. v. Keene Eng'g, Inc.,* 963 F.Supp. 522, 524 (E.D.Va.1997) (quoting *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993)). "Under Rule 12(b)(2), the accepted practice is to consider the extra-pleading material rather than accept the allegations of the complaint as true." *Id.* (citing *Wilson–Cook Medical, Inc. v. Wilson,* 942 F.2d 247, 253 (4th Cir.1991)).

■ Defendants did not submit any affidavits or other material in connection with their Motion to Dismiss. However, the Government submitted a copy of the deed in question as an exhibit to its opposition to Defendants' motion. In accordance with the above-cited precedents, the Court has reviewed the deed, which is useful in this analysis only to the extent that it shows that Virginia Maxwell did in fact sign it in her individual capacity. Although Defendants argue that Mrs. Maxwell held no interest in the property, and that she signed the deed in her individual capacity only out of an abundance of caution, the Court must draw all reasonable inferences in the Government's favor for purposes of this motion. It therefore holds that the fact that Virginia Maxwell signed the deed in her individual capacity is sufficient, at this stage of the proceedings, for the Court to find that the Government has properly stated a claim against her. Whether the deed accurately reflects the ownership interests of the various Defendants who signed it is a factual question that must be addressed either in a summary judgment motion or at trial. For now, the Court will deny Defendants' request to dismiss Virginia Maxwell from this action.

*2. Rule 9(b)*

■ Second, the Court finds that the allegations in the Complaint are sufficient to satisfy the heightened pleading requirements of Rule 9(b). As the Fourth Circuit has held, Rule 9(b) has four purposes:

First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of .... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999). In addition, "[i]n construing Rule 9(b), courts generally require that a plaintiff plead the 'time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby.'" *Breeden v. Richmond Cmty. College,* 171 F.R.D. 189, 195 (M.D.N.C.1997) (quoting *Liner v. DiCresce,* 905 F.Supp. 280, 287 (M.D.N.C. 1994)). Here, the Complaint alleges, *inter alia,* that (1) the Carriage Drive Property was transferred by Burt Maxwell—with the help of co-defendants Adcock and Virginia Maxwell—more than two months after he entered his guilty plea, but while the Government's motion for entry of a forfeiture money judgment was still pending in this Court before Judge Lee; and (2) that the transfer was made for less than equivalent value, or for consideration not deemed valuable in law, and was done in an effort to hinder or delay a creditor. (Compl.¶¶ 6–10, 13–18.)

After considering the precedents cited above, the Court finds these allegations sufficient to satisfy Rule 9(b). Specifically, the Court holds that the allegations contained in the Complaint are adequate to (1) put Defendants on notice; (2) ensure that the suit is not frivolous; (3) demonstrate that this is not the type of case in which all of the facts will be learned after discovery; and (4) prevent unnecessary harm to De-

fendants' reputation. *See Harrison,* 176 F.3d at 784. The Court further holds that the Complaint adequately describes the time, place and contents of the alleged fraud, as well as the identity of those participating therein and what was gained thereby. *See Breeden,* 171 F.R.D. at 195.

### 3. Rule 12(b)(6)

Third, Defendants' argue that the Complaint fails to state causes of action under either 28 U.S.C. §§ 3304(b) and 3306(a) or Virginia Code §§ 55–80 and 5581 because the transfer was done in satisfaction of a pre-existing debt.

As other courts have held, a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States,* 947 F.2d 1169, 1177 (4th Cir.1991); *see also Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir.1989). In passing on a motion to dismiss, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Moreover, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8.

After close analysis of the pleadings, the Court finds Defendants' argument that the Complaint fails to state a cause of action because the transfer was allegedly made in satisfaction of a pre-existing debt uncon-

vincing. The Complaint does not allege otherwise. Rather, the Complaint alleges that the conveyance was fraudulent in part because the property was transferred "without receiving a reasonably equivalent value in exchange for the transfer." (Compl.¶14.) The Complaint further alleges that the conveyance was fraudulent because it was done with the intent to "hinder or delay the ability of the plaintiff to collect a judgment that would be imminently entered against Bert [sic] G. Maxwell." (Compl.¶15.)[2] Whether either of these allegations can in fact be proven will depend on several variables, including, *inter alia,* the fair market value of the Carriage Drive Property at the time of the transfer, the amount of the pre-existing debt owed to Virginia Maxwell by Burt Maxwell, the amount owed on the deed of trust to which the property was subject, and the credibility of the Defendants, all of which present factual issues that must be determined by the fact-finder in this case.

■■ Accordingly, having accepted the Government's allegations as true, as it must for purposes of this motion, the Court holds that the existence of the pre-existing debt does not, *ipso facto,* prevent a conveyance from being fraudulent under § 3304 if such a conveyance was for less than reasonably equivalent value and/or made with the intent to hinder or delay the Government's ability to collect its forfeiture money judgment. Similarly, the Court finds that the existence of a pre-existing debt also does not prevent the conveyance from being fraudulent for lack of "valuable consideration" or "consideration deemed valuable in law" pursuant to

---

**2.** As the Government correctly notes, the allegations contained in the Complaint are supported by the fact that the conveyance in question was made following Burt Maxwell's entry of a guilty plea to a charge that carries with it the mandatory forfeiture of "any property constituting, or derived from, any pro-

ceeds the person obtained, directly or indirectly, as the result of such violation." 21 U.S.C. § 853(a). (Pl.'s Opp'n to Mot. to Dismiss at 5.) Therefore, the primary question under consideration by Judge Lee at the time of the conveyance was not the issuance of the forfeiture order, but rather its size and scope.

Virginia Code §§ 55–80 and 55–81, respectively.

■ Fourth, the fact that there was no lien, *lis pendens,* or other restraints on alienation placed on the property from the time of Burt Maxwell's indictment until June 2001, when the instant civil action was filed, does not vitiate the claims alleged in the Complaint. The absence of any affirmative restraints on legal alienation is wholly separate and distinct from the conveyance at issue here, which is alleged in the Complaint to be fraudulent. Simply stated, the fact that Burt Maxwell was not restricted from making a legal transfer of his property interest does not in any way grant him license to engage in a fraudulent transfer of such interest, which is what is alleged in the Complaint. The absence of such restraints therefore does not bar the Government from seeking to set aside the transfer as fraudulent under either federal or state law.

## B.

Defendants' final argument in favor of dismissal raises a somewhat novel question: whether the Government is estopped from proceeding with a subsequent civil forfeiture action in a case in which (1) a decision has already been reached with respect to the defendant's ability to pay a fine, and, by extension, the value of his available assets; and (2) it knew of the potentially fraudulent nature of the conveyance in question at the time of the sentencing hearing, but nevertheless failed to formally challenge its validity at that time.

### 1. *Collateral Estoppel*

■ Turning first to the doctrine of collateral estoppel, the Court notes that the Fourth Circuit has already held that it may be applied to bar the relitigation in a civil proceeding of issues previously determined in a criminal action. *S.E.C. v. Zandford,* 238 F.3d 559, 562 (4th Cir.2001), *cert. granted,* —— U.S. ——, 122 S.Ct. 510, 151 L.Ed.2d 418 (2001) (citing *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568, 71 S.Ct. 408, 95 L.Ed. 534 (1951)). However, in order for collateral estoppel to apply,

> the proponent must establish that: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Sedlack v. Braswell Serv. Group, Inc.,* 134 F.3d 219, 224 (4th Cir.1998).

In support of their argument that collateral estoppel bars litigation of the fraudulent conveyance issue, Defendants cite *Selbe v. United States,* 912 F.Supp. 202 (W.D.Va.1995), and *United States v. One 1987 Mercedes Benz 300E,* 820 F.Supp. 248 (E.D.Va.1993). Like *Zandford,* these cases affirm that, in certain circumstances, collateral estoppel may be applied to bar relitigation in the civil context of an issue already decided in a criminal case. *See One 1987 Mercedes Benz,* 820 F.Supp. at 253 (holding that the doctrine of collateral estoppel prevents a party from relitigating in a civil proceeding "an issue of fact fully litigated in a prior criminal proceeding and necessary and essential to the judgment of conviction entered in the criminal matter"); *Selbe,* 912 F.Supp. at 205 ("Issues litigated in a criminal action may have preclusive effect in a subsequent civil suit") (citing *One 1987 Mercedes Benz,* 820 F.Supp. at 253). As *Zandford* makes clear, however, the party attempting to assert collateral estoppel must demonstrate that the decision reached in the

prior criminal proceeding satisfies the five part test established in *Sedlack*. *See Zandford*, 238 F.3d at 562 (citing *Sedlack*, 134 F.3d at 224).

Although they do not expressly address each of the five factors enumerated in *Sedlack*, Defendants contend both that the validity of the conveyance was fully litigated when the Government failed to challenge it at sentencing, and that a decision was reached with respect to this issue which was necessary and essential to Judge Lee's determination that Burt Maxwell was incapable of paying a fine pursuant to § 5E1.2 of the Sentencing Guidelines. (Defs.' Response to Pl.'s Filing at 1–4.)

The Government counters by noting that Burt Maxwell's PSR simply stated that the property had been transferred, without making any conclusions regarding whether the transfer was made in good faith or for reasonable value. (Pl.'s Post–Hearing Filing at 1.) The Government therefore asserts that Judge Lee's adoption of the factual findings contained in the PSR does not in any way amount to a finding regarding the validity of the conveyance. (*Id.*) The Government further argues that a finding that the transfer was valid was not necessary in order for Judge Lee to conclude that Burt Maxwell was incapable of paying a fine, and that no finding by Judge Lee at the sentencing hearing could have bound the other parties involved in the instant civil action. (*Id.* at 1–4.)

After considering Defendants' argument in light of the five elements they must establish in order to apply the doctrine of collateral estoppel, the Court agrees with the Government. Specifically, the Court finds that Defendants have failed to establish the first, second, third, and fifth elements necessary to invoke the doctrine of collateral estoppel.

First, the issue sought to be precluded by Defendants concerns the alleged fraudulent nature of the conveyance, which was not the issue before Judge Lee at sentencing. Although the Assistant United States Attorney present at sentencing noted his suspicion that the conveyance may have been fraudulent,[3] the Court cannot find, based on the record before it, that the

---

**3.** As the Government notes in its Post–Hearing Filing, the Assistant United States Attorney present at the March 24, 2000, sentencing hearing stated as follows:

> Your honor, the government is not certain after speaking with [the probation officer assigned to the case] regarding this matter, whether it is—there is sufficient evidence to demonstrate obstruction.
> But, the government would say that at a minimum, the transfer appears to be somewhat suspicious coming at the time it did come, and that is pending this Court's decision on additional money being forfeited, $144,000 approximately.
> The government believes that that may factor into it and at the appropriate time may request a sentence along the middle to higher range of the guidelines as a result of that, while it may not constitute obstruction, and the government is in a difficult position to prove what the defendant's motives were in transferring that property at

the time the defendant did transfer the property.

> But, at the time, the government had not had an opportunity to speak to [the probation officer] because of our conflicting schedules regarding what she did or did not know about the transfer.

(Tr. of March 24, 2000, Sentencing Hearing at 4–5.) Additionally, near the end of the hearing, the Government stated:

> With respect—as the government indicated earlier, it is not because it cannot say definitely, although it has serious doubts and is very suspicious of the transfer and the time of the transfer of the property involving Ms. Adcock, the defendant's mother-in-law.
> It would ask, barring some sufficient explanation from the defendant and the government can't think of any reason why this transfer occurred when it did, other than to conceal or protect assets from seizure or forfeiture, I should say, by the Court and seizure by the government.

issue was "litigated" at the March 24th sentencing hearing as required by the first prong from *Sedlack*. Furthermore, assuming *arguendo* that the verbal exchange between the parties and the judge at the sentencing hearing amounted to the litigation of some issue, the issue litigated was whether Burt Maxwell's actions—including any false statements or misrepresentations made to the probation officer—constituted obstruction of justice, and therefore made him eligible for a two level enhancement pursuant to § 3C1.1 of the Sentencing Guidelines. This issue is clearly not identical to the one presented here, which is whether the conveyance should be set aside as fraudulent under either federal or state law.

With regard to the second prong, which requires an actual determination of the issue in the prior proceeding, other courts have noted that it applies "only when an issue of fact or law is *actually litigated* and determined by a valid and final judgment . . . ." *Anyanwutaku v. Fleet Mortgage Group, Inc.*, 85 F.Supp.2d 566, 573 (D.Md.2000) (emphasis added) (quoting Restatement (Second) of Judgments § 27 (1982)). Even assuming *arguendo* that the fraudulent conveyance issue was litigated at the prior criminal proceeding, the Court finds that no actual determination was reached with respect to this issue. Rather, Judge Lee simply made a finding regarding Burt Maxwell's ability to pay a fine; no decision was made with respect to the validity of the transfer at issue in this case. Furthermore, any adoption by Judge Lee of the findings contained in the

PSR cannot constitute an actual determination regarding the validity of the conveyance, as the PSR is silent with respect to whether the transfer was made for reasonably equivalent value and/or in an effort to hinder or delay the Government's ability to collect on any forfeiture judgments, which are the issues central to the instant civil action. (*See* PSR ¶¶ 96, 101.)

Third, assuming *arguendo* that the fraudulent conveyance issue was litigated at the March 24th sentencing hearing and that an actual determination was reached by Judge Lee with respect to this issue in his decision regarding Burt Maxwell's inability to pay a fine, it clearly was not a necessary part of any such decision. That is, as Defendants correctly note, the imposition of a fine is mandatory under § 5E1.2 of the Sentencing Guidelines unless a finding is made regarding a defendant's inability to pay. *See* U.S. Sentencing Guidelines Manual § 5E1.2(a) (1998) (stating that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine").[4]

However, Judge Lee need not have made any conclusion regarding the validity of the conveyance in order to find that Maxwell was unable to pay a fine. The PSR clearly indicates that he had no assets from which he could pay a fine. Accordingly, even if the conveyance could somehow have been set aside prior to sentencing, Burt Maxwell would still have had no assets from which to pay a fine, as the amount of the existing forfeiture order was

And, it would ask for a sentence in the mid range. So, I guess around 56, 57 months, the middle of the guideline range.
(Tr. of March 24, 2000, Sentencing Hearing at 19.) As Defendants correctly note, Judge Lee did not agree with the Government's sentencing recommendation. He did, however, sentence Burt Maxwell to 53 months, which was two months above the minimum sentence allowable under Maxwell's applicable guide-

line range of 51 to 63 months. (Tr. of March 24, 2000, Sentencing Hearing at 25–26.)

4. Although it has since been superceded by subsequent editions, the 1998 edition of the Sentencing Guidelines was in effect at the time of Defendant's sentencing, and will therefore be used throughout this Memorandum Opinion.

greater than the value of his interest in the Carriage Drive Property.[5] Furthermore, the PSR simply stated that the conveyance had been made in satisfaction of a pre-existing debt. (PSR ¶¶ 96, 101.) As previously noted, such a finding does not now prevent the Government from claiming that the transfer was made for less than reasonably equivalent value, or that it was made in an effort to hinder the Government's collection efforts. In addition, the Court notes that the forfeiture order entered by Judge Lee did not concern the Carriage Drive Property that is at issue in the instant civil action, but rather specified a dollar amount as opposed to a specific item of real or personal property.

Therefore, the Court holds that Judge Lee's determination that Maxwell was unable to pay a fine did not amount to a decision regarding the validity of the conveyance, as the same conclusion could just as easily be reached even if the conveyance is set aside. Accordingly, the issue was not necessarily decided at the sentencing hearing and may properly be raised and litigated in this case. *See, e.g., Tuttle v. Arlington County Sch. Bd.*, 195 F.3d 698, 704 (4th Cir.1999) (holding that prior ruling was not "necessary" for collateral estoppel purposes where it was one of two alternative bases for the district court's decision); *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 119 (4th Cir.1989) (stating

that, "[w]hen a dismissal is based on two determinations, one of which would not render the judgment a bar to another action on the same claim, the dismissal should not operate as a bar") (citing Restatement (Second) of Judgments § 20, Comment e and Illustration 4 at 173); *National Am. Ins. Co. v. Ruppert Landscape Co., Inc.*, 122 F.Supp.2d 670, 677–78 (E.D.Va.2000) (finding doctrine of collateral estoppel inapplicable in situation in which prior case did not require ruling to be made on the issue sought to be precluded).

In addition, a determination regarding the validity of the transfer also was not necessary to the decision made at sentencing with respect to the Government's initial request for an obstruction of justice enhancement. As previously stated, the issue before Judge Lee at the March 24th sentencing hearing was whether Burt Maxwell's actions—including any misrepresentations in his statements and/or submissions to the probation officer—constituted an obstruction of justice under § 3C1.1 of the Sentencing Guidelines. This issue is wholly separate and distinct from the issue of whether the collective actions of Burt Maxwell, Virginia Maxwell, and Beatrice Adcock are sufficient to warrant this Court voiding the conveyance as fraudulent under either federal or state law.[6] Accordingly, the Government's con-

---

**5.** The PSR submitted to Judge Lee makes clear that Burt Maxwell had no assets and no income at the time of sentencing. (PSR ¶¶ 96, 101.) The forfeiture money judgment entered by Judge Lee on February 11, 2000, required Maxwell to forfeit a total of $144,000, which is substantially more than the value of his interest in the Carriage Drive Property (*i.e.*, assuming, without deciding, that the $71,342 paid by Adcock for Burt Maxwell's interest in the Carriage Drive Property represents its true market value, Maxwell still would have owed in excess of $72,000 at the time of sentencing even if the conveyance had already been set aside). Accordingly,

even if the Government had requested that the conveyance be set aside and Judge Lee had determined that he had the power to do so in the context of a criminal proceeding, Maxwell still would not have had any assets from which to pay a fine. Judge Lee's determination that Burt Maxwell was unable to pay a fine is therefore not determinative of the fraudulent conveyance issue.

**6.** This proposition is perhaps best illustrated by the following example: Judge Lee could have found that Burt Maxwell provided false information to the probation officer regarding the circumstances surrounding the convey-

cession that it did not have sufficient evidence to support an obstruction of justice enhancement does not preclude it from now challenging the conveyance as fraudulent in the case at bar. *Cf. United States v. Moore*, 765 F.Supp. 1251, 1257–58 (E.D.Va.1991) (holding that criminal defendant's failure to challenge the amount of money at issue, as alleged in the criminal information, was not a basis for the Government's attempt to apply collateral estoppel in subsequent civil suit where monetary amount was not essential to defendant's prior plea agreement).

Fourth, even if Defendants could somehow meet the three prongs of the collateral estoppel test discussed above, the Court finds that the party against whom it is being asserted, the Government in this case, did not have "a full and fair opportunity to litigate the issue in the previous forum." *Sedlack*, 134 F.3d at 224. Rather, as previously noted, although the PSR reveals that the property was conveyed, it does not expressly state that the conveyance was made post-conviction, at a time when the Government's request for forfeiture was under consideration by Judge Lee. Nor does it contain any information regarding whether the transfer was for reasonably equivalent value. The relevant circumstances surrounding the transfer therefore were not known by the Government until March 23, 2001, or one day before the sentencing hearing. (Pl.'s Post–Hearing Filing at 2.)

### 2. Res Judicata

■ Finally, while sounding primarily in collateral estoppel, Defendants' arguments also implicate principles of res judicata to the extent that they attempt to assert that the Government failed to vigorously pursue the fraudulent conveyance issue at Burt Maxwell's sentencing hearing. However, as the transcript of the sentencing hearing clearly reveals, the Government, although only informed of the specifics of the transfer one day before the sentencing hearing, noted on the record at sentencing its suspicion that the transfer might be fraudulent. *See, supra*, note 3. It nevertheless concluded that it did not, at that time, have sufficient evidence to establish obstruction of justice, the only potential remedy available to the Government in the context of the criminal proceeding. It therefore requested a sentence in the middle to high end of the applicable guideline range in lieu of an enhancement for obstruction of justice. *See id.* This approach clearly comports with that suggested in Application Notes 4 and 5 to § 3C1.1 of the Sentencing Guidelines.[7] The Government's failure to vigorously pursue the obstruction of justice enhancement at sentencing therefore does not constitute a waiver of the fraudulent conveyance issue, but rather is merely a candid admission that the Government did not, at that time, have sufficient evidence to justify its request for a two level ob-

---

ance of the property, thereby constituting obstruction of justice, *see* U.S. Sentencing Guidelines Manual § 3C1.1 (1998), Application Note 4(h), but such a finding, standing alone, would not be sufficient to render the conveyance fraudulent under state or federal law, which is the issue in the instant civil action.

**7.** Application Note 4 contains a non-exhaustive list of examples of conduct that potentially warrant an obstruction of justice enhancement pursuant to § 3C1.1. Application Note 5

provides a similar non-exhaustive list of examples of conduct which do not warrant an enhancement under § 3C1.1, but nevertheless "warrant a greater sentence within the otherwise applicable guideline range." U.S. Sentencing Guidelines Manual § 3C1.1 (1998), Application Note 5. Having acknowledged that it did not have sufficient evidence to warrant a § 3C1.1 enhancement, the Government appropriately requested a higher sentence within the applicable guideline range as recommended in Application Note 5. *See, supra*, note 3.

struction of justice enhancement pursuant to § 3C1.1 of the Sentencing Guidelines. Accordingly, under the circumstances presented in this case, the Government's reluctance to pursue one remedy in the criminal proceeding does not foreclose its ability to claim a separate and distinct remedy in a subsequent civil proceeding. *Cf. United States v. Gelb,* 783 F.Supp. 748, 754–55 (E.D.N.Y.1991) (holding the doctrine of res judicata inapplicable in a civil fraudulent conveyance action where the Government had, in the previous criminal action, withdrawn its forfeiture claim).

 Furthermore, the Court holds that the application of claim preclusion, to the extent it is sought by Defendants, is also inappropriate because, as the Government correctly notes, the only party before Judge Lee at sentencing was Burt Maxwell.[8] Without Adcock, the current owner of the property, properly before the Court, Judge Lee could not have made any ruling regarding the validity of the conveyance at issue which would have been binding on her.[9] Accordingly, Defendants' preclusion arguments fail in all respects.

8. Defendants noted at oral argument that Adcock was physically present at the sentencing hearing, and therefore argued that she could have been called as a witness if either the Court or the Government wished to inquire into the circumstances of the transfer. The fact that Adcock was physically present at the sentencing, however, does not change the fact that she was not a party to the criminal case, and that she accordingly could not have been bound by any judgment issued by the Court at the sentencing hearing.

9. *See, e.g., Marrese v. American Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 382, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (noting that "claim preclusion generally does not apply where 'the plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts ....' ") (quoting Restatement (Second) of

## III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss will be denied. An appropriate Order shall issue.

Judgments § 26(1)(c) (1982)); *Dionne v. Mayor and City Council of Baltimore,* 40 F.3d 677, 683 (4th Cir.1994) (holding that "a critical predicate for applying claim preclusion is that the claimant shall have had a fair opportunity to advance all its 'same transaction' claims in a single unitary proceeding") (citing Restatement (Second) of Judgments § 26, cmt. c); *see also* Restatement (Second) of Judgments § 26(1)(c) (stating that the doctrine of collateral estoppel does not apply in situations in which "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief").